the Honorable the Judges of the United States Court of Appeals for the Fourth Circuit. All right, thank you. Mr. Byrne, can you hear me? Yes, Your Honor, I can. Mr. Adams, can you hear me? Yes, Your Honor, I can. Okay, we'll begin with the case of United States v. Wilson, and Mr. Byrne, we'll hear from you first. Thank you, Your Honor, and may it please the Court. My name is Jonathan Byrne. I'm of the defendant in this case, Justin Wilson. There's no dispute that Mr. Wilson brandished a firearm when he stole a pickup truck from two individuals. It's also undisputed that that firearm was unloaded. As a result, Mr. Wilson's brandishing is the type of empty threat that the Supreme Court has held is insufficient to support a conviction for carjacking. The defendant, Mr. Wilson, acted with the intent to kill or inflict serious bodily harm when he stole the truck. As a result, this court should vacate Mr. Wilson's conviction for carjacking, as well as the related conviction for brandishing a firearm in connection. Mr. Byrne, if I understand this case, and I just I think it'll help us get right to the nub of what I think the issue in this case is, is the district court seemed to conclude that the elements of carjacking were satisfied not by the firearm, but by when he asked for the keys. And there was a misunderstanding as to where the keys were, that the defendant swelled up, squared up, and was ready to fight. And he stood up and and basically suggested, if you don't give them to me, I'll take them by force. I think that Judge Chambers found was the element that satisfied the carjacking element and not the gun. So maybe you could address that, whether he was clearly erroneous and relying on that. Yes, Your Honor, I would agree that the Judge Chambers put a lot of emphasis on those facts. Well, it's necessary. If he didn't have that, your argument's foolproof, isn't it? I mean, basically, I never like to be foolproof. Well, I understand. But it seems to me that Judge Chambers understood that conduct to be the conduct that satisfied Section 2-119. Yes, Your Honor, I think those are the findings that he made. It's clearly erroneous because the actions that Mr. Wilson engaged in still did not demonstrate that he had an intent to cause death or serious bodily harm in order to complete this offense. In addition to the firearm, when they have this back and forth over the keys, there are some some threats that are made. But I would argue that the threats don't really provide anything that the brandishing of the firearm did not. But certainly that firearm, your argument on the firearm is that he knew it wasn't loaded and it wasn't loaded and that type of thing. And let's set that aside. But let's stick with the facts on which the district court relied. And it doesn't actually have to be asserted. It has to be present if necessary to affect the carjacking. In other words, the the attempt or the use of bodily injury or threat of death has to be communicated, I suppose, through the evidence was sufficient, saying, basically concluding that, asking the witness, was he ready to fight? And the witness said yes. And it seemed to me that was important to the district court. It was, Your Honor. And the reason I don't think that meets the standard of proving the intent is because the courts have said that when you're considering the intent, you have to consider essentially the quality of the circumstances. And the circumstances in this case, as presented at trial, were that Wilson was a single individual and he was dealing with two grown adult men. And the idea that he was presenting proof of an intent to cause death or serious bodily injury by this swelling up and suggesting he might fight them for it, doesn't does not rise to that level. In other cases where there has been threats of physical violence, it's been... Do we have to make a judgment about whether he was outmanned or he was heavier or smaller than that person? It seems to me, we don't know all those circumstances. I mean, he could have been a karate expert or whatever. But he did seem to present himself in a manner that he was ready to fight and said, I'm going to have to take the keys if you don't give them to me, implying by force. The district court said that revealed an intent, at least of serious bodily injury, if necessary. I think, Your Honor, first of all, in terms of Mr. Wilson's potential martial skills, that would have been evidence. Well, I don't, I don't know that. I'm just tossing that in. Yeah, sure. But in terms of his confronting the two of them and telling them he'll take the keys, I think you have to look at it again in the context of all that had happened up to that point, because we know that shortly before, two gentlemen with the pickup truck, he had another incident with the gentleman in front of the auto parts store. And when that gentleman basically pushed back against him, and he wouldn't give him the truck, and he said, I need to get inside and get the keys. Mr. Wilson didn't do anything to him at that point. He didn't try and cut off his... Well, he assumed he was going to get the keys because he was told that the man was going to go inside and get the keys. Right? And the man instead went inside, locked the door and called 911. Yes, but he hadn't really given any indication that he was actually going to give the guy, give Mr. Wilson the keys. His behavior increased over time, didn't it, counsel? At one point, he tries to get a vehicle by subterfuge. The next time, he makes a threat, but the man goes inside. The third time, he actually directly threatens to kill somebody. The in the exchange. And I don't concede, I don't think the evidence is clear that he knew the firearm was unloaded. There's not evidence in the case that ties those two pieces together. He certainly did threaten to kill somebody. He's got a weapon that can be used as a club, if nothing else. It's not clear to me that he knew it was unloaded from the faxes they came in. And the judge found that he intended to escalate if necessary. Why is that clearly erroneous when we see an escalating pattern? I think that is clearly erroneous, your honor, because we still are left with a lack of evidence that he actually would have engaged in the conduct necessary to complete the offense had there been resistance. As to the firearm- Excuse me, though, Mr. Byrne. If he was threatening and saying, do this or you will die, which was the testimony, either help me unload the vehicle or we could die. Why isn't that? I mean, you know, in small, it seems to me that we rejected the argument that you're making here now, that the weapon was unloaded. Why isn't the presence of an unloaded weapon, with the escalation of activity, as Judge Myers has pointed out, plus the issuing of death threat, why isn't that enough in this case to demonstrate the required intent? I think, your honor, it's not enough because the threats are empty, and the Supreme Court has said that's not sufficient. Okay, what makes them empty? Well, because the firearm is unloaded, and that's what the evidence in the case is. It was unloaded when it was given to him. It was unloaded when it was recovered. There's no evidence otherwise, and the government has never argued it. Okay, but we've rejected that in small. You can't just rely on an unloaded weapon and be home free. So what else makes your case different from small? Well, I think, honestly, I would have to go back and look at small. I think there's a difference there between a lack of evidence as to whether the gun was loaded, versus affirmative evidence that the gun was unloaded. And I think that is an important distinction. But I also think when you're getting into threats made by the defendant, that it's important not to collapse the two separate elements in carjacking, that is, the intimidation element that is common from robbery, and the intent element, because the Supreme Court's holding in Holloway is that you can have something that is a threat, and that is a threat that someone believes and acts upon, but is not sufficient to demonstrate the intent of the defendant to actually use deadly force or force that would constitute serious bodily harm. This was a bench trial, though, and the judge clearly told us he understood that element. He understood it to be a separate element, and that he found that these facts were sufficient to establish to him, beyond a reasonable doubt, that that mental state, in fact, existed. And we have to find that no reasonable jurist could have reached that position. Isn't that correct? I mean, it's not a question of whether or not that element is known to be an element. He clearly understood it to be an element. Well, Your Honor, the change certainly did make those factors. I would argue that I think the judge did tend to conflate the two in his holding, and it's an easy conflation to make, because when you have a case like this, where all you have are threats, you don't have an action that really demonstrates the intent to obtain a carjacking conviction. I'm sorry, I thought there was another question. No, you can continue. Thank you, Your Honor. There is, of course, a separate basis upon which this court could reverse Mr. Wilson's convictions, and that's the Giglio issue, the witness statements that the government failed to disclose prior to trial that were developed during the trial prep process that provided these additional facts that the district court relied on in concluding that Mr. Wilson was guilty of carjacking. In response to the defendant's post-trial motion, the government admitted that these additional facts were developed in these trial prep sessions, and they were not turned over to the defense prior to trial. The government knew what the testimony was going to be, because they laid it out in an opening statement, and they relied on it in closing. And if you go through the Giglio factors, these discussions happened well before trial, although it's important to note that the first trial prep sessions with these three witnesses occurred the day before Mr. Wilson entered his waiver of his right to a jury trial, which goes to, importantly, to that issue. The evidence was favorable to Mr. Wilson. It impeached the testimony that was given by these three witnesses. It was suppressed by the government. The government had the statements, and they knew what witnesses were going to say prior to trial. And it was also material. The district court erred in concluding that these weren't material facts, and I think Your Honor hit on this by pointing to those additional facts for the conclusion that Mr. Wilson was guilty of carjacking. Essentially, what happened was, as we rolled towards trial, the government recognized that with an unloaded firearm, simply branching it wasn't enough. There needed to be something more. And in these additional statements, they got something more. Our position is that even with the additional statements, that is still insufficient to support a conviction. But certainly it's a separate basis for this court to vacate Mr. Wilson's convictions that the government withheld that evidence that should have been turned over to the defense. And I wanted to point out, in terms of the government's duty to turn over all favorable information, including impeachment information, that's actually part of the standard arraignment and discovery order in the Southern District of West Virginia, one of which was entered in this case. It's actually docket number 18 at page four. It's not part of the joint appendix, but it is part of the record. If there aren't any other questions at this point, I'll reserve the remainder of my time for rebuttal. Thank you. Thank you. All right, Mr Adams. Good afternoon, Your Honors. Thank you. And may it please the court. Your honors, the most direct evidence of the defendant's intent in this case comes from the defendant's own words. The threats, the verbal threats that he made to the victims, notwithstanding the fact that an unloaded firearm was used during the commission of the offense, those verbal threats, when considered and with the entirety of the circumstances surrounding his conduct, all viewed in light most favorable to the government, constitutes substantial evidence. We've obviously already talked about the verbal threats. There were two separate instances where these verbal threats were made. The first incident occurred when he immediately brandished a firearm coming upon our victims, and he makes an express threat to kill the victims. Of course, the firearm in this case, the government, I think, has to concede that the firearm was unloaded. The government wouldn't concede that he knew the firearm was unloaded. I think the record is really silent as to that. But regardless, I don't think that that controls the determination of the case. And small is a case that is of particular importance here. And small has already been discussed. Small specifically discussed the use of an In small, the government produced no evidence whatsoever that the firearm was loaded. The only evidence the government produced in small as to the firearm is that it was actually a firearm. It was a real firearm. When the defendant in small tried to make a similar argument that, hey, the government couldn't show this gun was loaded, this court specifically said, first, a loaded Second, even if the firearm was unloaded, a reasonable finder of fact, a reasonable juror, could still find that the defendant had the requisite intent, either through using the firearm itself as a blemishing weapon or, more importantly, by simply using brute force. So the first threat we have where he makes a direct express threat to harm these victims, brute force is still enough, and a reasonable finder of fact could find that he had the intent at that point. As the offense continued, we get to the second threat, which I agree the district court seemed to focus more on in his findings. It was at that point when there was some misunderstanding about where these keys were located. He asks for the keys. They told him the keys were in the truck, and either he didn't hear them or he misunderstood. And he makes the second threat at that point, where he says, Are you going to give me the keys or do I have to come take them? That is an unmistakable threat to commit violence to these victims if that's what's necessary for him to retrieve those keys. We're also asking, just like we asked the district court, the court to consider the entirety of the circumstances at the point that that threat was made. This was really at the end of a crime spree that had lasted all day. The defendant at this point had already told the victims that he had been on the run from the state police. He told Mr. Clark, the gentleman that was at the Advance Auto Parts store just prior to encountering these victims, when he confronted him, he told him he was on the run from the police. And he certainly knew when Mr. Clark did not come back out of Advance after about two minutes, that Mr. Clark had to have been contacting the police, which would more pinpoint the relevant at that point. And the district court said as much by stating that he was clearly a desperate man at this point. So that's entirely proper for the finder of fact to consider. When you also look at the circumstances of his interactions with these victims, notice he first, uh, demanded that the victims take his belongings from the stolen expedition and transfer them to the county vehicle. It was only at the point that he was ready to leave when all the belongings had been transferred when he makes the demand for the keys. Um, at that point, he had no other options other than to get the keys. And again, the district court, uh, found accordingly. Um, the district court even commented directly on the use of the firearm. And again, uh, I'm I'm not gonna concede that he knew the farm was unloaded. But even if he did, that still doesn't decide this case for a couple reasons. One small that we just discussed into the district court actually contemplated that scenario. It didn't make a finding that he knew the farm was unloaded. But the district court did say that even if he knew that he could not shoot the machine gun and that at the point he makes the demand for the keys that it had no doubt that he would try and would have tried to physically assault the victims if that's what was necessary for him to get the keys at that point. Eso again, we're asking the court consider all the entirety of the circumstances. Um, when you consider again the entirety of the circumstances, it goes back even before Mr Clark. Uh, it starts all the way with this defendant's theft of the expedition. Again, this was a crime spree that he was on that day. The district court expressly found that he had stolen the expedition. He had knew it was a machine gun during the offense. He told Mr Clark again, that's the individual at the advance store. He told Mr Clark that he had a fully automatic weapon. Eso he knew that he had a machine gun. Um, he fled from Deputy Young in Kanawha County on again. That's particularly important because it shows the defendant knew, um, at the juncture when he demanded those keys that he had been on law enforcement's radar, so to speak. Uh, that day, uh, it was a particularly dangerous, uh, flight from Deputy Young. They both ended up going off road. He ramped over some railroad tracks. The deputy eventually decided not to follow him. Um, but that shows that he knew that law enforcement was trailing him at that point. Uh, after he left where he encountered Deputy Young, that's when he happened upon the advanced storm when he ran into Mr Clark. Um, I know there's been some discussion from my colleague about the fact that he didn't harm Mr Clark and how that tends to negate, um, the evidence that he had this specific intent. Um, and I would respectfully disagree. And I believe the district court also considered that possibility. Uh, when he encountered Mr Clark, he approached him aggressively. Um, not as aggressively as he approached the ultimate victims, but he approached aggressively. Um, he simply tried to talk him into trading cars. Um, but when he saw that that wasn't gonna work, that's when he turned more aggressive and started making threats. He told him he was an ex marine and that he had a fully automatic weapon that, um, if Mr Clark knew what was good for him, he would simply get in the expedition, the stolen expedition. The fact that he didn't harm Mr Clark wasn't because he thought Mr Clark was resisting. It was because Mr Clark simply fooled him. Mr Clark told him the keys are in the store. I'll go get the keys for you. The defendant at that point thought that Mr Clark was actually complying with his demand. And that's what the district court found. So the fact that he did not harm Mr Clark, it doesn't negate, um, the evidence that he would have had that specific intent. After Mr Clark into the store, the testimony was it was approximately a two minute period that the defendant remained in the parking lot waiting, presumably for Mr Clark to return with the keys. Uh, it was at that point, uh, that it's apparent that the defendant sort of figured out that Mr Clark wasn't coming back out. Um, he circled around the store, and that's where he went to a separate location in the shopping plaza where he encountered these, uh, these victims. So all that leads up to, um, again, the very last threat that he made these victims, which was the threat to take these keys by force. He knew that law enforcement had pinpointed his location. He knew, um, at that point that all of his belongings had been transferred over into the resisted his demand for the keys. That's when the district court clearly said that even if he couldn't shoot the machine gun, he would have physically assaulted them at that point to get the keys. And again, we know from small that brute force is sufficient, uh, for a defendant to commit a carjacking. So again, most favorable to the government. Um, that that does constitute substantial evidence. Um, just as to the threats. When you consider the threats in a light most favorable to the government, um, that means the defendant meant what he said. Um, if he makes a threat, there are really only two possibilities. Your honors on one is that it is a bluff, which we know is in all the other cases. Um, the only other possibility is that it's not a bluff and that he meant what he said. And for this court on the standard of review, considering that threat in a light, light, most favorable to the government, that means that he meant what he said when he said that he would come take the keys by force from the victims if if that was necessary. What the court ultimately found just speaking briefly as to the district district court's decision to deny the motion for a new trial. The district court did not abuse his discretion there. The district court found that, uh, first that the during the interaction with these victims was not inconsistent with the victims. Prior statements, the victims gave a written statement. Um, the day that this incident occurred, they both gave a written statement. Both victims testified before the grand jury. Both of the victims in the written statement and in their grand jury testimony described the threat that the defendant made to take the keys by force. Um, that was not some new piece of evidence that the government sprung at the last second. Um, the defendant was well aware that this case went far beyond the fact that the defendant would have used an unloaded machine gun. So the district court correctly found that that testimony was simply was not inconsistent. Um, as to the other instances of cited testimony, the district court found that it simply wasn't material, and it's not material for two reasons. First, the defendant was able to cross examine each and every witness at trial with the uh, saying the government withheld in violation of its duties. So the defendant was able to effectively use the material at trial. Beyond that, the second reason it's not material is because the district court himself leaves no doubt as to how the court considered that evidence. The district court said that although the the information regarding the defendant's at the moment that he made the threat to take the keys by force, although that was not inconsistent with the victim's prior statements, even if the court had not have heard the testimony regarding the demeanor, he still would have found that the government had established the specific intent element, and the district court really used some strong language in regards that the opinion in order denying the motion that it was inconceivable to the district court that the defendant would not have had that intent at the moment that he threatened to take the keys by force. Uh, as to the other cited evidence regarding the state trooper, the district court said he simply did not consider that as part of his findings regarding the defendant's specific intent. In this case, that was also consistent with how the district court viewed that at at the trial when he was making his factual findings and rendering the verdict. The district court agreed with the defendant. He said that the that the testimony regarding the chase, which we haven't talked about much here today, but the chase after he left with the county truck that that testimony was of limited import. That's what he said in making those findings at the time that he rendered the verdict. He said he agreed with the defendant. He said that that chase could, of course, speak to the defendant's state of mind. Um, but the intent, of course, has to be established at the time that the defendant demands or takes control of the vehicle. So the court really considered that of limited import. And says it simply had no effect on the court's verdict in this case. Um, so just to sum up the issue regarding the motion for a new trial, this is obviously not a case where a defendant has discovered some information or some evidence months after. And we have to speculate or try to analyze how that would have affect the case affected the case if it was were part of it. In this case, the defendant was able to use the information which he now cites to. Secondly, we don't have to speculate as to how that material affected the verdict in this case because the district court tells us directly that even without that information, it was inconceivable to him that the didn't have the intent. Um, the last point I want to make your honors is that, um, the defendant in this case is consistently and again with with all due respect to my colleague has consistently tried to frame this case as one where it was just a simple legal issue as to whether the use of an unloaded firearm was sufficient to establish the specific intent. And the evidence just simply went far beyond that. Again, you have all the evidence of the crime spree and you have the evidence of the interaction with Mr Mr Clark, the gentleman in advance. And you have most importantly, the defendant's direct threats on two separate instances with these victims, uh, which is in addition to his brandishing of the weapon. So the evidence that the defendant knew from the very instance of the government turned over the first statements of these victims went far beyond the fact that he simply would have used, um, an unloaded firearm. Counsel, the fact that the giggly material was seduced by the government at trial doesn't that significantly undercut the argument that this arm is exculpatory information and would undercut the government's case since it was introduced by the government during his case in truth at trial at the time of the defendant had full opportunity to respond to it. Yes, Your Honor, I would agree. This is not exculpatory information. Um, the government certainly never viewed it as exculpatory information, and the government really never viewed again the information regarding the defendant's demeanor as anything other than consistent with what the victims had already said on two separate occasions. Um, it certainly wasn't court. So and the court so found that the that that information was entirely consistent again with the victims of prior written statements as well as the victim's grand jury testimony. Yes, Your Honor. I'm happy. Is that cover it? Yes, Your Honor. Thank you very much. Thank you, Mr Byrne. I think you're muted. Uh, yes. So thank you, Your Honor. Uh, I want to talk a little bit about we've talked about threats and particularly in the context of the Giglio discussion. Threats are not enough. It was whether there is an intent to follow through on the threats and what the latter developed information that the government presented for the first time at trial was is that Mr Wilson was gonna square up and puffed up and was gonna fight these guys. Matter of fact, the word fight was brought up by the government. It wasn't just a man. And so what that information did was it shake those threats from potential empty threats to ones that he might have tried to act upon. And so I think that makes it that that evidence a little bit more. Um, it certainly makes it exculpatory in the sense that it goes to the impeachment of those witnesses. I was gonna say it's hardly exculpatory. You would have to make the strategic decision to use it. Uh, if they disclosed it before trial to you, the best you get from it is impeachment. The potential difference between what was in the statements and grand jury testimony on the one hand and the demeanor that was revealed later and the benefit to you would have been to use it for impeachment. But you did use it for impeachment, didn't you? Well, I think Council made the best use they could of it on short notice. They had no idea what it was until opening statements. But I think that's also where it's important to consider how this impacted Mr Wilson's decision to waive his trial in front of a jury and proceed to a bench trial because if he had been aware that this was going to be a factually disputed case, he may very well have decided that it was something he wanted 12 jurors to decide instead of a single judge. Um, but also talking in terms of we don't have any evidence of that, do we? I mean, when when the man testified, you didn't stand up or your counsel didn't. His counsel didn't stand up and say, Hey, I'm surprised by this. Uh, in view of this, I wanted a jury trial. No, no, Your Honor. Yeah, only in our motion for a new trial where we raised that. Yeah. As to the issue of materiality with the Giglio, I think it's important to note that materiality is not a sufficiency analysis, and thus it's not sufficient for the district court to say, Well, even without this evidence, I still would have found him guilty. The question is whether, uh, this evidence cast doubt on the verdict on the confidence of the verdict. I think it still does that, even if the district court incorrectly, in my opinion, would still have convicted Mr Wilson without that. Um, going back to the sufficiency argument very briefly, uh, on small, I think this case is distinguishable from small for two important reasons. One is the one I was speaking in small. There was no evidence about whether the gun was loaded. In this case, the only evidence is that the gun was not loaded, and therefore that's a difference. But the other difference in small is that small was part of a group of three defendants who accosted a single person. They had a numerical advantage such that a threat to, um, do some sort of brute force violence to the victim actually carried some weight. It's entirely different than a 20 year old kid allegedly squaring off with two full grown adults. One other thing I wouldn't counsel. The court has the opportunity to look at the defendant and that the two witnesses and make his own determination that we don't have the opportunity to do about whether or not that threat was genuine. Given the age and relative size and strength of individuals, right? The court said specifically, I believe the evidence establishes he had the intent to do broadly bodily harm. If either facts that are Francisco had refused to let him have the keys to go away. So this is not a question about whether or not the judge understood the element where the judge was able to observe the individuals and make that judgment for himself, right? He certainly had the ability to observe, uh, the witnesses and the defendant. But I believe any conclusion that the judge drew from that there's no record evidence to support a determination that Mr Wilson really would have taken on these 22 full grown men. Well, I don't know. You know, that, uh, that suggests that he wouldn't take him on unless he determined he would win. But what the district court found was he was desperate. They all his gear had already been loaded onto the truck and he needed to get away. He was being pursued by the police. He knew that. Uh, and he basically said, I'll have to take it away from me by force. That really appears like a genuine, uh, intent to use assault. And the court said, uh, if he hadn't gotten his way, I believe and find that he would have at least tried to physically assault one or both of these individuals to get the keys to do whatever was to do to be able to get away. And that is a finding of the necessary intent under 21 19, isn't it? It's a finding, but I think it's an incorrect finding. You're okay. I point out if I could. I know I'm over my time. I just want one final point. Uh, at the time there was the back and forth about the keys. Uh, you mentioned that his gear was already in the truck. That's because facts and Francisco had decided they were gonna let him have it. Well, no, no, they didn't decide he threatened to kill him and he had this gun. He was brandishing it and they didn't know whether it was loaded. Now that threat may have been empty, but they didn't know that. So they had made a decision. They're not going to engage this guy. They're gonna help him. But then when it comes time to get the keys, uh, the court acknowledged the gun was on the on the seat. Uh, but that, uh, the defendant still threatened to use force to take it from him. Now, whether he used the force and would have won is not the issue. It's whether the victims would have been hurt, seriously hurt. And, uh, I think the implication is that they would have been. The court found that they would have been because you had a desperate man. That's a finding. I mean, and the questions with the standard isn't whether it's the only finding, but it's a finding the court made. And we're we just determine whether it was clearly erroneous or whether there was substantial evidence to support it. Agreed, Your Honor. And I think the thing I would leave you with is that the if it's the discussion about the keys is what turns us from an empty, empty threat to to intense sufficient carjacking. The government approved more before it sends a 20 year old to prison for 30 years. All right. Thank you. Thank you. Yeah, Mr Byrne. At this point, we would come down and Greek Council. Both you probably know that that's our practice, and we would not have denied you that. Uh, this is the first time I recall we've ever not been able to do it, but we're doing virtually and greet you and thank you for your arguments. When you come to court again, remind us and we'll give you a double handshake. Uh, thanks for coming. And we'll take a short recess and reconstitute the case for the next case. Thank you. Thank you, Your Honor. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Richard Ernest Myers II